# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| **KATHLEEN A. BUNT,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 3:21-cv-00896** |
| | ) | **Judge Aleta A. Trauger** |
| **CLARKSVILLE MONTGOMERY** | ) | |
| **COUNTY SCHOOL SYSTEM,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM

Before the court is the Motion to Dismiss (Doc. No. 7) filed by defendant Clarksville Montgomery County School System ("School System" or "CMCSS"). For the reasons set forth herein, the motion will be granted in part and denied in part.

## I.     FACTS AND PROCEDURAL HISTORY

Plaintiff Kathleen Bunt filed this lawsuit against the School System on December 2, 2021, while a related case against the same defendant, also filed in this court, *Bunt v. Clarksville Montgomery County School System*, No. 3:19-cv-01013, was still pending.[1] In a sprawling 47-page *pro se* pleading that does not remotely comply with Rule 8 of the Federal Rules of Civil Procedure, Bunt realleges many of the facts that supported her first lawsuit and asserts new facts and new claims against her employer for (1) retaliation in violation of the Title VII of the Civil Rights Act of 1964 ("Title VII") and the Age Discrimination in Employment Act ("ADEA") for

---

[1] Case No. 3:19-cv-01013 settled following mediation in May 2022. The parties discussed settlement of this case during that mediation but indicated to the mediator that no settlement would be reached while the Motion to Dismiss in this case remained pending. (*See* Case No. 3:19-cv-01013, Doc. No. 91 (Mediator Report).)

filing a charge of age and race discrimination with the Equal Employment Opportunity Commission ("EEOC") on January 10, 2018; (2) age discrimination in violation of the ADEA, in connection with the rejection of the plaintiff's application for a position at West Creek High School ("WCHS") in the spring of 2020, and retaliation for the plaintiff's having filed an EEOC charge arising from that rejection; and (3) tortious interference with a prospective business relationship, in violation of Tennessee common law.

### A. Count I: Retaliation for Filing January 2018 EEOC Charge

According to the Complaint, Bunt has been employed by the School System since 2014 as a substitute teacher.[2] She has applied numerous times for a permanent full-time position in her "endorsement" areas of Business Education, Career Exploration, and other positions for which she is eligible.[3] Bunt states that she engaged in activity protected by Title VII and the ADEA when she filed an EEOC age discrimination charge against the School System on January 10, 2018 (identified as Charge No. 494-2018-00450), which she later amended to include a race discrimination claim (Doc. No. 1-4, at 2, 3), and then filed a related lawsuit against the School District (Case No. 3:19-cv-01013). She alleges that the defendant received a copy of the EEOC charge on January 23, 2018 and, therefore, was aware of that protected activity, as well as the fact that she later filed the related lawsuit. Bunt alleges that she was subjected to retaliatory acts

---

[2] She worked for the School System for an additional two years, from 2012 to 2014, as an employee of Kelly Educational Staffing Services.

[3] Bunt holds a bachelor's degree in Business Administration. (Doc. No. 1 ¶ 1.) As the School System explains, Bunt has never obtained a traditional teaching license and instead holds a "Professional Occupational Education License." (Doc. No. 8, at 2.) She is eligible for a "job-embedded license in Business Ed[ucation]" (Doc. No. 1-1, Izatt Decl. ¶ 21), because her license "contains the Business Education (151) endorsement" (Doc. No. 8, at 2). Based somewhat on the defendant's explanation, the court understands Bunt to be alleging that the license she holds, together with her degree in Business Administration, makes her eligible to teach business-related classes.

resulting from the protected activity, including the following:

(1) She was subjected to increased scrutiny while substitute teaching for the School System, receiving more than twenty-four principal observation visits during the year and a half beginning the day after the School System received the EEOC charge and continuing through November 4, 2019. (Doc. No. 1 ¶ 37.)[4]

(2) She was denied interviews for three teaching positions for which she was eligible and for which she applied on October 15, 2018 (Related Arts Teacher, West Creek Middle School), March 11, 2019 (Career Exploration Teacher, WCHS), and June 18, 2019 (CTE Consulting Teacher, Central Services South). (Id. ¶ 38.)

(3) On May 21, 2019, she was "threatened and intimidated and dismissed from Northwest High School" in the presence of a class of students on her second day of substitute teaching that class by Assistant Principal Shane Smith, who yelled at her and threatened her by stating, "You are going to jeopardize your future with this district." (Id. ¶ 39.) She reported this event to Dr. Theresa Muckleroy (Northwest High School Principal),[5] Melissa Izatt (the plaintiff's supervisor), and Jeanine Johnson (the School System's Chief Human Resources Officer (see Doc. No. 1-2, Johnson Decl. ¶ 5)), but "[n]o investigation took place." (Doc. No. 1 ¶ 39.)

(4) The plaintiff had problems with the "Substitute phone system not calling her for assignments," as a result of which she would have to call the system to obtain assignments. (Doc. No. 1 ¶ 40.) She complained about this problem repeatedly, to no avail. (Id.) Bunt does not state when this problem occurred.

The plaintiff filed an EEOC charge alleging retaliation based on these events in August 2019 (Charge No. 494-2019-02476). (Doc. No. 1-4, at 5–6.) She further alleges that she did not discover until the School System submitted its EEOC Position Statement in response to her EEOC

---

[4] The plaintiff cites to "Exhibit 53" as "list[ing] all of the 'Principal Observation Visits'" to which she was subjected during that timeframe (Doc. No. 1 ¶ 37), and she states generally that "[a]ll exhibits referred to within this Complaint are filed with Case No. 3:19-cv-01013" (id. at 1). It is not appropriate for the plaintiff to cross-reference exhibits filed in a different case, particularly because those exhibits are not actually easy to locate. The court accepts as true for purposes of the Motion to Dismiss the plaintiff's allegations regarding the number of Principal Observation Visits to which she was subjected, but the court has not located, and declines to spend additional time attempting to locate, any of the exhibits cited in the Complaint that were not actually filed with the Complaint initiating this lawsuit.

[5] The plaintiff notes that Muckleroy is the person who allegedly asked the plaintiff her age during an interview on October 24, 2017, which was the subject of the plaintiff's January 10, 2018 EEOC charge of age discrimination. (Doc. No. 1 ¶ 40.)

charge that she had been excluded from other substitute teaching jobs, including jobs at Northeast Middle School and Montgomery Central Middle School. (Doc. No. 1 ¶ 44.)

Bunt asserts that "[t]here was a **causal connection between the protected activity and the adverse action.**" (*Id.* ¶ 45 (bold in original).) The causal connection she identifies is that all of the above-referenced adverse actions took place over the course of the year and one-half after she filed the January 2018 EEOC charge, beginning immediately following the filing of her EEOC charge, but, prior to that action, she "had been substituting and there were no instances like what has been described above." (*Id.*)

The plaintiff then alleges that she discovered in October 2021 the "CMCSS 'Blacklist' that has her name on it. (*Id.* ¶ 47.) She claims that the "blacklist" "ties all of this retaliation together because Plaintiff's name is on it and she was not allowed to have an interview request by hiring principal[s] unless the hiring principal[s] contacted CMCSS HR first. This is exactly why Plaintiff has been repeatedly passed over for interviews since she applied back in April of 2009 . . . ." (*Id.*) The document is undated but concerns application dates ranging from June 28 through August 31, 2017. It clearly, therefore, could not have been caused by the plaintiff's protected activity that took place approximately five months *later*, in January 2018. The plaintiff discusses the so-called "blacklist" (Doc. No. 1-3, at 1) primarily in connection with her claim of tortious interference with prospective business relations. It is addressed in greater detail in that context below.

### B.     Count II: Age Discrimination and Retaliation

#### 1.     *West Creek High School Career Exploration Position – Age Discrimination*

On December 8, 2019 (and "after a decade of waiting for an invitation to interview," "two long letters of complaint to CMCSS HR," and "two EEOC charges"), while the plaintiff was substitute teaching at WCHS, the principal of that school contacted her to invite her to interview

for a Career Exploration teaching position at WCHS. (Doc. No. 1 ¶ 49.) The plaintiff accepted the invitation to interview[6] but was notified on December 18, 2019 that she had not been selected for the position. (*Id.*; *see also* Doc. No. 1-4, at 8.) The candidate who was hired was 34 years old and had seven years of experience teaching English at WCHS. Bunt, who was 54 years old at the time and had twenty-eight years of teaching experience, twenty-one of those in the field of Career Exploration, asserts that the person hired was obviously less qualified than she. (Doc. No. 1 ¶ 50.)

The plaintiff filed an EEOC charge (No. 494-2021-00997) alleging age discrimination and retaliation, related to having been denied the Career Exploration teaching position at WCHS more than eighteen months later, in July 2021. (Doc. No. 1-4, at 8–9.) Bunt acknowledges that that charge was dismissed by the EEOC as untimely, having been filed more than 300 days after the event in question. (Doc. No. 1 ¶ 53; *see also* EEOC Notice of Rights, Doc. No. 1-4, at 10.) The plaintiff alleges, however, that the COVID-19 pandemic interfered with the filing of this charge, insofar as she learned of her non-selection in December 2019, but schools were closed because of the pandemic in March 2020, and she did not discover that the younger candidate had been hired for the position until September 2020, when schools reopened and the plaintiff returned to substitute teaching. (Doc. No. 1 ¶ 53.) Bunt also claims that, although she "completed an inquiry in December 2020 with the EEO" related to Charge No. 494-2021-00997, "it took until July 9,

---

[6] She explains that she was "hesitant" to accept the invitation because of fear of rejection, because she had applied for the same position six months previously, on March 11, 2019, was denied an interview, and had complained to Jeanine Johnson about having been denied the opportunity to interview for a position for which she was so obviously qualified. (*Id.* ¶ 51.) This adverse event was one of the subjects of an EEOC charge filed in August 2019 and was also raised in the "Final Amended Complaint" in Case No. 3:19-cv-01013. (*See* Case No. 3:19-cv-01013, Doc. No. 30 ¶¶ 117–18, 131–33.) The position was filled by a White male who only stayed in the job for five months. (*Id.* ¶ 132.) The plaintiff also postulates, in both the "Final Amended Complaint" in Case No. 3:19-cv-01013 and the present Complaint, that the only reason she received the interview in December 2019 was that she had complained and then filed a lawsuit in connection with not being interviewed when the job was posted in the spring of 2019.

2021 to be able to file her charge due to the pandemic and being unable to get an open appointment time scheduled." (Doc. No. 1 ¶ 53.)

2. *Retaliation Related to EEOC Charge No. 494-2021-00997*

The plaintiff also alleges that she discovered in September 2021 that she was not seeing posted substitute positions available at WCHS, Kenwood High School, Montgomery Central Middle School, or Northeast Middle School. She asked her supervisor, Erica Christmas, why not. Christmas responded that the principals at Kenwood and WCHS had requested that she be excluded from substituting at their schools but that Northeast and Montgomery Central Middle Schools would "now . . . allow her to return to substituting after two years of being excluded." (*Id.* ¶ 54.) The plaintiff was never given a reason for her exclusion from Northeast, and she is perplexed by the reason given by Central—"language used"—because she "has never used inappropriate language in the presence of anyone let alone students." (*Id.* ¶ 54.)

Regarding Kenwood and WCHS, the plaintiff states that, through her lengthy tenure with the School System, she earned "quality points" that enable her to select the schools for which she prefers to substitute. (*Id.* ¶ 55.) These two schools are on her list of preferred schools. She asserts that her exclusion from Kenwood is based on "false allegations made on March 3, 2021" and that she complained about these false allegations to Christmas, but no one investigated her complaint. (*Id.* ¶ 56.) She was told that the exclusion was temporary and would be "revisited" in August 2021. (*Id.*) In September 2021, Bunt asked Christmas again about the exclusion and was told that it was "permanent at the request of the new principal at that school." (*Id.*) The plaintiff alleges that there is some connection between the new principal, Dr. James Bailey, and the principal who caused the plaintiff's termination from a different school in April 2010. The plaintiff implies, but does not actually state, that her exclusion from Kenwood High School was retaliatory for prior protected activity.

Bunt further alleges that her permanent exclusion from WCHS in the fall of 2021 was in retaliation for filing the July 9, 2021 EEOC charge (No. 404-2021-00997), which alleged age discrimination by the principal of the same school, Dr. Matthew Slight. She alleges that Slight knew about the EEOC charge and that she has "lost many substitute job opportunities because of Mr. Slight's exclusion of her." (*Id.* ¶ 58.) She asserts that there is a causal connection between her protected activity (the July 9, 2021 EEOC charge) and the adverse action (being permanently excluded from WCHS) "because it occurred right after the EEOC charge had been filed." (*Id.* ¶ 58.)

The plaintiff further alleges that she officially complained of retaliation to her supervisor on September 14, 2021, and that Christmas forwarded the complaint to Jeanine Johnson. Johnson shared her "investigative summary" with the plaintiff on October 5, 2021. (*Id.* ¶ 59.) The plaintiff asserts that the investigative summary was one-sided, because Johnson interviewed only the principals who had excluded the plaintiff but never asked the plaintiff for her side of the story. Consequently, the plaintiff was never given the opportunity to prove that the principals' allegations against her are false. (*Id.* ¶ 59.) The plaintiff appealed Johnson's findings to the Director of Schools, per the School System's discrimination policy. (*Id.* ¶ 60.) Her appeal was denied.

The plaintiff states that she filed an inquiry (No. 494-20220-00294) with the EEOC on October 14, 2021 about filing a fourth charge of retaliation in connection with these "school exclusions" as well as the "blacklist" discussed below. (*See* Doc. No. 1-4, at 11–13.) As of the December 2, 2021 date of filing this Complaint, the plaintiff had an appointment to file her charge on January 4, 2022. (*Id.* at 14; *see also* Doc No. 1 ¶ 61.)

## C. Count III: Tortious Interference with Prospective Business Relationship

The plaintiff alleges that the School System's Human Resources personnel interfered with the "Prospective Employment Relationship between Plaintiff and the hiring principal[s]" at the

schools where she sought employment. (*Id.* ¶ 62.) In support of this claim, she alleges that another former employee of the CMCSS, Demetrius Thomas, provided to the plaintiff a document to which the plaintiff refers as the "blacklist."[7] The blacklist is a spreadsheet listing ten names (only first names are visible on the document provided to the plaintiff), the dates on which these individuals had applied for specific teaching jobs, and the position titles. In addition, the spreadsheet has a column the heading for which states "Must contact HR prior to interview request score." (Doc. No. 1-3, at 1.) Under that heading, the corresponding boxes for each of the ten teachers says "Contact HR." The "Comment" column next to the "Must contact HR" column states, with respect to "Kathleen" and the "Leadership for Life Teacher" position at WCMS for which she applied on August 31, 2017, "Please contact HR. Job embedded Business with TSU." (*Id.*) The plaintiff alleges that, even without last names, it is clear that she is the "Kathleen" to whom this list refers, because she applied for the position identified on the date shown and has a teaching endorsement for "Job Embedded Business with TSU." (Doc. No. 1 ¶ 72.) The plaintiff alleges that this list makes it "very clear" why she has never had an interview over the past decade and that the documents she submitted with the "blacklist" corroborate her conclusion that it is, in fact, a blacklist.

The documents to which she refers include, for example, an email from Jeanine Johnson to Bunt explaining that "Human Resources personnel are not involved in the interviewing and selection of teachers for placement at schools. When a vacant teaching position is posted and an eligible candidate applies, the principals, as the hiring supervisors, select who they want to interview from the eligible candidates." (Doc. No. 1 ¶ 76; Doc. No. 1-3, at 2.) The plaintiff asserts

---

[7] The court takes judicial notice that Demetrius Thomas's claim of race discrimination against CMCSS is scheduled for trial to begin in August 2022 before Judge Eli Richardson of this court, who denied the defendant's Motion for Summary Judgment as to that claim.

that Johnson's statement to her that HR is not involved in hiring decisions is contradicted by the spreadsheet showing "Contact HR" next to her name and the others on the list. (Doc. No. 1 ¶ 76.) The plaintiff's tortious interference theory is premised upon the blacklist and the plaintiff's conviction that HR personnel intentionally interfered with the ability of school principals to hire her (and others) for specific jobs over the course of the past decade. She alleges that the individuals on the list were deemed eligible for hire but, by placing their names on this list and requiring principals to "contact HR" before hiring any of these candidates, including Bunt, the School System's HR personnel interfered with the candidates' ability to obtain jobs. (*See* Doc. No. 1 ¶ 89 ("In other words, the 'potential for hire' was there, but CMCSS HR personnel's 'interference' induced a breach between hiring officials/principals and the candidates/applicants on this list, including Ms. Bunt. This is tortious interference . . . with absolutely 'no legal justification' whatsoever for it.").) She asserts that HR personnel were "not a party to this 'prospective business relationship' between the hiring official/principals and the candidates/applicants." (*Id.* ¶ 90.)

### D. The Motion to Dismiss

The defendant seeks dismissal of the Complaint for failure to state a claim for which relief may be granted. Regarding Count I, the School System argues that the Complaint fails to allege sufficient facts to plausibly state a claim for retaliation in connection with the filing of an EEOC charge. It argues that Count II is barred by the statute of limitations and that Count III is subject to dismissal because, as a matter of law, the School System's HR office cannot interfere with a prospective business relationship of the School System. (Doc. Nos. 7, 8.) The plaintiff filed a Response in opposition to the Motion to Dismiss (Doc. No. 14), along with a document styled "Important Details Regarding Exhibits Pertaining to the Plaintiff's Response in Opposition" and fifteen pages of exhibits. (Doc. No. 15.) The School System filed a Reply. (Doc. No. 16.)

## II.    STANDARD OF REVIEW

In deciding a motion to dismiss for failure to state a claim under Rule 12(b)(6), the court will "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007); *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 619 (6th Cir. 2002). "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). The court must determine only whether "the claimant is entitled to offer evidence to support the claims," not whether the plaintiff can ultimately prove the facts alleged. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

The complaint's allegations, however, "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. To establish the "facial plausibility" required to "unlock the doors of discovery," the plaintiff cannot rely on "legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action," but, instead, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 679; *Twombly*, 550 U.S. at 556. According to the Supreme Court, "plausibility" occupies that wide space between "possibility" and "probability." *Iqbal*, 556 U.S. at 678. If a reasonable court can draw the necessary inference from the factual material stated in the complaint, the plausibility standard has been satisfied.

Generally, if "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d).

At the same time, however, it has long been the rule that a court may consider, not only the complaint and exhibits attached to it, but also exhibits attached to a defendant's motion to dismiss, "so long as they are referred to in the Complaint and are central to the claims contained therein." *Brent v. Wayne Cty. Dep't of Human Servs.*, 901 F.3d 656, 694 (6th Cir. 2018) (citation omitted). A court may also consider public records without converting a Rule 12(b)(6) motion into a Rule 56 motion. *Jones v. City of Cincinnati*, 521 F.3d 555, 562 (6th Cir. 2008) (citation omitted).

## III.    DISCUSSION

### A.    Ancillary Matters

The plaintiff complains that the defendant's Rule 12 motion is not timely, and the defendant asserts that it is, in fact, timely under the Federal Rules of Civil Procedure but that the plaintiff's response should be stricken because it is not timely and is overly long.

The court finds, first, that the defendant's Motion to Dismiss is technically untimely. The record reflects service of the Complaint on the defendant on December 13, 2021, but the Motion to Dismiss was filed (the first time, before the court directed that it be refiled) on January 6, 2022, twenty-four days later, rather than the twenty-one permitted by Rule 12(a)(1). The defendant maintains that the filing was timely, because Rule 6(d) operates to extend the filing deadline by three days "when service is accepted by mail." (Doc. No. 16, at 1.) The defendant provides no authority to support its suggestion that Rule 6(d) applies under the circumstances, and it plainly misinterprets the Rule.

Rule 6(d) states: "When a party may or must act within a specified time after being served and service is made under Rule 5(b)(2)(C) (mail) . . . , 3 days are added after the period would otherwise expire under Rule 6(a)." Fed. R. Civ. P. 6(d). But "service" under Rule 5(b)(2)(C) does not occur when a party *receives* a document by mail. Rather, under that rule, "service is complete upon mailing." Fed. R. Civ. P. 5(b)(2)(C). Assuming that Rule 6 even applies to the service of an

initial pleading by certified mail, Bunt "served" the Complaint on the defendant by certified mail on December 10, 2021, and the defendant actually received it three days later, on December 13, 2021. (*See* Doc. No. 11.) Rule 6(d) does not entitle the defendant to add three days to that date to compute the filing deadline for its Motion to Dismiss.

The court, however, finds no prejudice arising from the defendant's apparent miscalculation of the filing deadline and its misinterpretation of Rule 6 and will not strike the Motion to Dismiss simply because it was filed three days late. Moreover, the plaintiff's Response was two (business) days late, as Magistrate Judge Newbern directed Bunt to file her response "by February 3, 2022" (Doc. No. 13), but it was not filed until Monday, February 7, 2022. The court finds no prejudice arising from this delay either and will not strike the Response as untimely.

However, Magistrate Judge Newbern also directed the plaintiff to file a response that did not exceed twenty-five pages. The plaintiff's filing nominally complies with that directive, as only the signature page appears on page 26, but the document is not in compliance with Local Rule 7.03(a), which requires that all material in motions and briefs filed with the court, except quoted material and footnotes, be double-spaced. If the plaintiff had employed proper spacing in preparing her document, it would undoubtedly far exceed twenty-five pages in length. Given the plaintiff's *pro se* status, the court nonetheless accepts the filing. However, because the plaintiff's "Important Details" and the exhibits attached to that filing are clearly in derogation of Magistrate Judge Newbern's Order, the court will disregard them entirely. The court further notes that, under Rule 12, documents outside the pleadings may not be considered without converting a motion to dismiss into a motion for summary judgment. Fed. R. Civ. P. 12(d). The court declines to convert the present motion into a motion for summary judgment and, for that reason, too, declines to consider the additional exhibits submitted by the plaintiff in response to the Motion to Dismiss.

The court will proceed to address the defendant's motion as it pertains to each of the plaintiff's claims.

**B.**    **Count I – Retaliation Relating to January 2018 EEOC Charge and Prior Lawsuit[8]**

To state a claim for discrimination or retaliation under Title VII or the ADEA, Bunt must allege sufficient factual content to permit the court to reasonably infer that the School System discriminated against her "with respect to [her] compensation, terms, conditions, or privileges of employment, because of [her] race, color, religion, sex, or national origin[,]" 42 U.S.C. § 2000e-2(a)(1), or her age, 29 U.S.C. § 623(a)(1), or discriminated against her because she "opposed" any such discrimination, 42 U.S.C. § 2000e-3(a), 29 U.S.C. § 623(d). *See Keys v. Humana, Inc.*, 684 F.3d 605, 610 (6th Cir. 2012) (articulating pleading standard for discrimination claims under Title VII); *Ford v. Wendy's of Bowling Green*, No. 3:21-cv-00310, 2021 WL 2952938, at *4 (M.D. Tenn. July 14, 2021) (Trauger, J.) (articulating pleading standards for discrimination and retaliation claims under Title VII and the ADEA). Bunt is not required to plead a *prima facie* case of discrimination or retaliation under *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), to survive the School System's Motion to Dismiss. Rather, "[t]he *prima facie* case . . . is an evidentiary standard, not a pleading requirement." *Swierkiewicz*, 534 U.S. at 510; *Keys*, 684 F.3d at 609 (same). "Thus, 'the ordinary rules for assessing the sufficiency of a complaint apply[,]'" *Pedreira v. Ky. Baptist Homes for Children, Inc.*, 579 F.3d 722, 728 (6th Cir. 2009) (quoting

---

[8] The School System's Memorandum erroneously characterizes this claim as "stemming from [Bunt's] July 2019 EEOC Charge." (Doc. No. 8, at 4.) Bunt, however, did not file a July 2019 EEOC charge, though she did file a July 2021 EEOC charge. In any event, Count I is unambiguously premised on the filing of the January 2018 EEOC charge, as alleged in the August 2019 EEOC charge (No. 494-2019-02476). (Doc. No. 104, at 6.) The court presumes that the defendant intended to refer to the January 2018 charge.

*Swierkiewicz*, 534 U.S. at 511), and the court considers only whether Bunt "has sufficiently pled 'a claim to relief that is plausible on its face,'" *id.* (quoting *Twombly*, 550 U.S. at 570).

However, "while a plaintiff need not establish a *prima facie* case at the pleading stage, the elements of a *prima facie* case are nonetheless aspects to consider when determining the plausibility of a discrimination claim." *Finley v. Miami Univ.*, 504 F. Supp. 3d 838, 844 (S.D. Ohio 2020) (citations omitted). The *prima facie* elements of a retaliation claim, under either Title VII or the ADEA, are: (1) the plaintiff engaged in activity protected by Title VII and/or the ADEA; (2) the defendant knew that the plaintiff had exercised her protected rights; (3) the defendant thereafter took an action that was materially adverse to her; and (4) there was a causal link between the protected activity and the adverse action. *Hubbell v. FedEx SmartPost, Inc.*, 933 F.3d 558, 568 (6th Cir. 2019); *Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 523 (6th Cir. 2008).

For purposes of the Motion to Dismiss, the School System does not dispute that the plaintiff engaged in protected activity, that the School System was aware of that fact, and that Bunt suffered various adverse actions. The School System argues, however, that "the complaint fails to allege any facts pointing to a causal link between the Plaintiff's protected activity and the adverse actions she claims she suffered." (Doc. No. 8, at 5.) The question, then, is whether Bunt has plausibly alleged some causal connection between the protected activity and the adverse action. "At this stage of the litigation, [she] need only set forth minimal facts plausibly alleging that this is the case." *Finley*, 504 F. Supp. 3d at 849 (internal quotation marks and citation omitted).

The defendant argues that, insofar as the plaintiff alleges that she was denied interviews for three open positions between October 2018 and June 2019 in retaliation for having filed her January 2018 EEOC charge, she fails to allege any facts suggesting that the hiring principals in question had knowledge of her protected activity. Likewise, it argues that the Complaint does not

plausibly allege that the Assistant Principal at Northwest High School had knowledge of the plaintiff's EEOC charge in May 2019 when the plaintiff's conflict with him occurred. The School System further argues that other allegations supporting Count I, "including Ms. Bunt's issues with the substitute call system and a long-term substitute position, present bare recitals of grievances that are not conceivably related to the story of discrimination and retaliation that Ms. Bunt has come to believe." (Doc. No. 8, at 5 (citing Doc. No. 1 ¶¶ 37, 41–43).) The defendant asserts that, in reality, the only basis for causation upon which the plaintiff relies is the timing of her EEOC charge in relation to the adverse actions but that a complaint that pleads facts that are "merely consistent" with a theory of the defendant's liability "stops short of the line between possibility and plausibility of entitlement to relief." (*Id.* (quoting *Iqbal*, 556 U.S. at 678).)

In her Response, the plaintiff again relies on the timing of events, asserting that, up until she filed her EEOC charge, and except for the fact that she had not had any interviews between 2009 and 2017, she had never experienced the "array of retaliatory behavior" to which she was subjected beginning just after she filed the EEOC charge in January 2018 and continuing for the next eighteen months. (Doc. No. 14, at 1.) She argues that retaliatory animus is demonstrated by the HR office's failure to investigate any of her complaints and by the fact that her name appears on the HR office's "blacklist" that "prevented her from hire in full time permanent teaching positions." (*Id.* at 2.) The plaintiff further argues that the facts she has alleged show a "convincing mosaic" of retaliatory conduct sufficient to plausibly support her retaliation claim, including the repeated instances in which she has been denied interviews for positions for which she is qualified, the unusually close scrutiny of her work, her exclusion from several schools with no justification, and HR's refusal to investigate her claim of verbal abuse by the Assistant Principal Shane, all combined with the fact that, before she engaged in protected activity, she had been described by

her then-supervisor as a "dedicated" and "professional" employee who "always wants to do a good job." (Doc. No. 14, at 5.)

In its Reply, the defendant points out that the plaintiff admits that she never received any invitations to interview until *after* she filed her EEOC charge and still claims that the continued lack of interviews is retaliatory. It argues, in short, that Bunt's "convincing mosaic" is anything but.

The court finds that the plaintiff has alleged sufficient facts to give rise to a plausible retaliation claim based on at least some of the events alleged in the Complaint. Notably, the defendant does not dispute that the plaintiff has alleged actions sufficiently "adverse" to satisfy that element of a retaliation claim, and it does not address the plaintiff's allegations that she was subject to enhanced scrutiny of her work beginning immediately following the filing of her EEOC charge and continuing for the next eighteen months. The Sixth Circuit has held that "acutely" close temporal proximity between protected activity and an adverse action may give rise, without more, to an inference of a causal connection. *Mickey*, 516 F.3d at 524. The fact that other allegedly adverse actions continued over the same timeframe—including the plaintiff's not being selected to interview for several specific positions within the scope of her licensure and HR personnel's refusal to investigate her complaints into other issues[9]—lends further support to an inference of a causal connection. Regarding the defendant's argument that the plaintiff fails to allege facts showing that the hiring principals at the schools at which the plaintiff sought interviews were aware

---

[9] The defendant argues that there is no suggestion of any causal connection between the plaintiff's January 2018 EEOC charge and her verbal altercation with Assistant Principal Shane Smith in May 2019, and the court agrees. However, the plaintiff's position regarding that event is that HR's failure to investigate her complaint about Smith demonstrates HR personnel's retaliatory animosity toward her. The defendant does not argue that a failure to investigate personnel claims is not sufficiently serious to constitute an adverse action for purposes of its Motion to Dismiss, so the court presumes, at this juncture, that it does.

of the plaintiff's protected activity, the court finds that this question is outside the scope of the court's inquiry at this juncture. The plaintiff plausibly alleges that the *defendant* was aware of her protected activity (particularly including HR employees), and, without discovery, the plaintiff has no way of knowing to what extent that information was relayed to other officials within the School System.

To be sure, some of the events the plaintiff complains about are unlikely to have any causal connection with her protected activity, specifically including her vague complaint about "problems with the Substitute phone system not calling her for assignments" (Doc. No. 1 ¶ 42) and about being included on the "blacklist" that predates her protected conduct. Otherwise, however, the Complaint, just barely, alleges facts sufficient to establish a plausible causal link between the plaintiff's protected conduct and the adverse actions against her. The defendant's motion will be denied, insofar as it seeks dismissal of this claim.

### C.    Count II – Claims Related to Career Exploration Position at WCHS

#### 1.    Age Discrimination Claim

Plaintiffs typically must file a timely discrimination charge with the EEOC in order to bring an ADEA lawsuit. *Amini v. Oberlin Coll.*, 259 F.3d 493, 498 (6th Cir. 2001) (citing 29 U.S.C. § 626(d)). An EEOC charge must be filed within 180 days of the alleged discrimination, unless the alleged unlawful action occurs in a "deferral state." *Id.* Tennessee is such a "deferral state," *Jackson v. Richards Med. Co.*, 961 F.2d 575, 579 (6th Cir. 1992) (citing Tenn. Code Ann. § 4-21-101), which means that a plaintiff generally has 300 days to file the EEOC charge. *Amini*, 259 F.3d at 498. The 300-day period begins to run when "the employment action at issue is communicated to the plaintiff." *Amini*, 259 F.3d at 498.

The limitations period, characterized by the courts as a "condition precedent" to bringing a federal lawsuit for employment discrimination, is non-jurisdictional and subject to equitable

tolling and waiver. *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 398 (1982). Because the timely exhaustion of administrative remedies is a prerequisite to filing suit under the ADEA, a plaintiff must adequately allege timely exhaustion in her complaint, and a plaintiff who "has failed to do so has failed to state a claim" for which relief may be granted. *Grooms v. Walden Sec.*, No. 3:21-CV-00363, 2022 WL 949842, at *3 (M.D. Tenn. Mar. 29, 2022) (Richardson, J.) (citations omitted).[10]

The time for filing an EEOC charge may be equitably tolled, but the Sixth Circuit has "repeatedly cautioned that equitable tolling relief should be granted only sparingly." *Amini*, 258 F.3d at 500 (citations omitted). The Sixth Circuit has provided a non-exhaustive list of factors that should be considered, if relevant, in determining whether equitable tolling of the EEOC filing period is appropriate:

---

[10] Generally, the application of a statute of limitations is an affirmative defense on which defendants bear the burden of proof, and plaintiffs are not required to plead facts to avoid the application of a statute of limitations in order to state a claim. *Cataldo v. U.S. Steel Corp*, 676 F.3d 542, 547 (6th Cir. 2012). For that reason, "a motion under Rule 12(b)(6), which considers only the allegations in the complaint, is generally an inappropriate vehicle for dismissing a claim based upon the statute of limitations." *Id.* There is some question as to whether that rule applies to the administrative exhaustion requirement in ADEA cases. *Compare, e.g.*, *Lockett v. Potter*, 259 F. App'x 784, 786 (6th Cir. 2008) (recognizing, in the context of Title VII case, that "failure to exhaust administrative remedies in a timely manner is an affirmative defense, and the defendant bears the burden of pleading and proving this failure"), *with Brown v. Abbott Labs.*, 90 F. App'x 891, 892 (6th Cir. 2004) (finding that the district court properly dismissed the complaint for failure to state a claim, because "[t]he timely filing of an administrative complaint is a procedural prerequisite to bringing a Title VII action in federal court," and the plaintiff "submitted no proof that he filed an administrative complaint . . . before bringing his Title VII action"). This discrepancy is not relevant here, because the plaintiff has pleaded all the dates relevant to a determination of whether her EEOC charge was timely, and the defendant has raised the issue in its Motion to Dismiss based on the facts as pleaded by the plaintiff. When it is clear from the complaint that a claim is time-barred, dismissal under Rule 12(b)(6) may be warranted. *See Cataldo*, 676 F.3d at 647 ("[When] the allegations in the complaint affirmatively show that the claim is time-barred . . . , dismissing the claim under Rule 12(b)(6) is appropriate.").

1) lack of notice of the filing requirement;

2) lack of constructive knowledge of the filing requirement;

3) diligence in pursuing one's rights;

4) absence of prejudice to the defendant; and

5) the plaintiff's reasonableness in remaining ignorant of the particular legal requirement for filing his claim.

*Id.* (citations omitted). "The decision whether to equitably toll a period of limitations must be decided on a case-by-case basis." *Id.* Where the operative facts are undisputed, the court can rule as a matter of law on whether equitable tolling applies. *Id.* at 498.

In her Complaint, the plaintiff acknowledges that the EEOC dismissed her charge as time-barred, but she suggests that the limitations period for exhausting her administrative remedy should be tolled for some period of time, both because COVID "closed schools in March 2020," as a result of which she did not learn who had been hired in her stead until September 2020, and because, although she "completed an inquiry" with the EEOC in December 2020, she was not able to file the charge until July 9, 2021, "due to the pandemic and being unable to get an open appointment time scheduled." (Doc. No. 1 ¶ 53.)

In support of its Motion to Dismiss, the defendant asserts that the plaintiff's age discrimination claim arising from her non-selection for the Career Exploration position at WCHS in December 2019 is clearly time-barred, because the plaintiff's EEOC charge arising from that adverse action was not filed until July 9, 2021, almost 600 days after the plaintiff was notified that she had not been selected for the job, and well outside the 300 days allotted for submission of a charge. The defendant argues that the plaintiff is not entitled to equitable tolling, because it is clear that the plaintiff did not exercise reasonable diligence in discovering the identity of the person hired and in submitting a timely charge.

The court finds that none of the factors identified in *Amini* weighs heavily in Bunt's favor. As in that case, the plaintiff does not "claim to have lacked knowledge or notice of the filing requirement." *Amini*, 259 F.3d. at 501. Indeed, she could hardly do so, in light of her extensive past experience with filing EEOC charges. Although it is unclear how the late filing would prejudice the School System, "the Supreme Court has held that this factor alone is not a sufficient basis for allowing equitable tolling relief to the plaintiff." *Id.* (citing *Baldwin Cty. Welcome Ctr. v. Brown*, 466 U.S. 147, 152 (1984)).

Regarding diligence, the plaintiff asserts in her Response that she researched the identity of the successful candidate as early as January 2020 but could not find out her age, though she suspected from the new hire's photograph and employment history that she was younger than forty. Bunt argues that she could not simply ask the School System, because the School System would not have given out information regarding the new hire's age. The court is not persuaded; the plaintiff could have, at a minimum, contacted the School System's HR office to inquire about the new hire or have tried to contact the employee herself, since the plaintiff knew her identity. The plaintiff, instead, made no attempt to ascertain her comparator's age or qualifications.

In *Amini*, the court found that the plaintiff's "'regular' computer visits" to the college's website and a "physical visit to the campus" to search the announcement boards for information on the new hire did not constitute diligence in the pursuit of the plaintiff's rights. *Id.* Moreover, as the court noted, the plaintiff there did not check the college's website from July until September, when he finally discovered the identity of the new hire. But, even then, the plaintiff did not file his EEOC charge until December 9, twelve weeks after he discovered the identity of the new hire. The court found, on this basis, that the plaintiff had not exercised reasonable diligence in pursuing his rights. Bunt's facts are similar, insofar as she claims to have fortuitously discovered the age of the

new hire in September 2020, but, even though the 300-day period had not yet expired at that point, she waited an additional three months before even contacting the EEOC to make an "inquiry." By December 2020, the 300-day period had expired, but, rather than insisting on an immediate filing and providing the information required at that time to file an actual charge, Bunt filed the charge in July 2021. The plaintiff clearly did not exercise diligence in protecting her rights.

The fifth factor identified in *Amini* is "the plaintiff's reasonableness in remaining ignorant of the particular legal requirement for filing [her] claim." *Amini*, 258 F.3d at 500. In her Response to the Motion to Dismiss, the plaintiff argues that she "truly believed" that a discrimination claim related to her rejection for the Career Exploration teaching position at WCHS in December 2019 would simply be an extension of the claims in her second EEOC charge (No. 494-2019-02476, filed on August 26, 2019) and her first lawsuit, since it "concern[ed] the exact same position, the same school and the same hiring principal and was the second time she had been denied hire by this hiring principal." (Doc. No. 14, at 13.) For that reason, Bunt claims, when she finally learned of the successful candidate's age on September 22, 2020, she did not hurry to file a discrimination charge based on that event. (*See id.* ("Ms. Bunt, at this point in time, genuinely was still thinking that since she had pled fully the details of the Career Exploration teaching position in her Amended and Final Amended Complaints [in Case No. 3:19-cv-01013], the Career Exploration teaching positions for both times she has applied and been denied hire would be included in her current pending case for trial.").) She claims that she did not understand that the December 2019 hiring decision was not part of Case No. 3:19-cv-01013 until Magistrate Judge Barbara Holmes issued her Report and Recommendation on February 2, 2021. (Doc. No. 14, at 14.)[11]

---

[11] In this Report and Recommendation, Magistrate Judge Holmes did not address the plaintiff's claim arising from her not being selected to interview for the Career Exploration job at WCHS, in the spring of 2019, much less her claim related to her non-selection in December 2019.

The court is not persuaded by this argument. First, a refusal to hire an applicant is a discrete act that constitutes a separate "unlawful employment practice." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114–15 (2002). Each such act must be timely raised in an administrative charge in order to be actionable in a subsequent lawsuit. *Id.*; *Broadway v. United Parcel Serv., Inc.*, 499 F. Supp. 2d 992, 999 (M.D. Tenn. 2007). Although the plaintiff claims now that she considered the jobs to be the same, it is clear that, while the teaching position was the same, and it was at the same school, the job was posted and filled on two separate occasions approximately nine months apart, and each time the job was filled, a separate hiring decision was made. The plaintiff had no basis for simply assuming that a claim relating to her non-selection for the job in December 2019 would be a "continuation" of a claim relating to her not being interviewed for the job in the spring of 2019. Second, the August 2019 EEOC charge (No. 494-2019-02476) (related to Bunt's not receiving an interview) asserted only retaliation as the basis for her claim—not age discrimination. (*See* Doc. No. 1-4, at 5.) And third, the plaintiff does not allege in her Complaint that she made any attempt to amend the August 2019 charge to incorporate events that took place in December 2019 until after the Magistrate Judge issued her Report and Recommendation in February 2021. The court does not find that the plaintiff's purported ignorance as to whether her claim would be considered exhausted warrants equitable tolling under the circumstances.

Finally, the plaintiff argues that the EEOC issued the right to sue letter even though it found the plaintiff's claim untimely, which the plaintiff understood to mean she had "permission" to file

---

Instead, the Magistrate Judge simply observed that the plaintiff's "claims that she was not selected for positions in 2019 and 2020, events that occurred after her 2018 Charge[,] . . . are not exhausted claims that are a part of this lawsuit." (Case No. 3:19-cv-01013, Doc. No. 54, at 14.) The plaintiff filed an 80-page Objections to the Court's Report and Recommendation (Doc. No. 56.) The court has not located therein any objection to the Magistrate Judge's refusal to consider the plaintiff's claims related to her not being interviewed for the Career Exploration position at WCHS in the spring of 2019 or not being selected despite being interviewed in December 2019.

suit. In the same vein, she maintains that she only recently discovered that, under the EEOC rules, she was actually not required to wait until the EEOC issued a Notice of Rights before filing suit under the ADEA and that, if she had "not submitted the Notice of Right to Sue to the defendant and the Court . . . , the 'untimeliness' issue would never have been . . . raised by the Defendant in order to dismiss this portion of the Plaintiff's case." (Doc. No. 15, at 16.) These arguments, too, are unavailing. The issuance of the EEOC's Notice of Rights, indeed, meant that the plaintiff had the right to file a lawsuit, but it did not eradicate the exhaustion requirement or the court's ability to dismiss the claim for failure to timely exhaust. Moreover, even if she had filed suit before the Notice of Rights was issued, the defendant likely would still have raised timeliness as an issue.

In sum, the court finds that the plaintiff's discrimination claim based on her non-hire for the Career Exploration job at WCHS in December 2019 is barred by the plaintiff's failure to timely exhaust that claim through the administrative process and that equitable tolling of the 300-day exhaustion period is not warranted. The defendant's Motion to Dismiss will be granted insofar as it is directed to that claim.

2.    *Retaliation Claim*

That determination, however, does not dispose of Count II of the Complaint altogether. As set forth above, the plaintiff also clearly alleges that she suffered retaliation for filing the July 9, 2021 EEOC charge (No. 404-2021-00997). Among other things, she claims that Matthew Slight, the principal of WCHS, is the same individual who engaged in age discrimination when he rejected her application for the Career Exploration job at his school and that he engaged in retaliation when he permanently excluded her from consideration for any teaching jobs at WCHS, effective in the fall of 2021. (*See* Doc. No. 1 ¶ 58.) The defendant does not address the retaliation claim (or the question of whether it has been properly exhausted), and the court declines to consider it *sua sponte*. The retaliation claim asserted in Count II, therefore, remains pending, despite the court's

conclusion that the discrimination claim based on the plaintiff's non-selection for the Career Exploration job in December 2019 is subject to dismissal.

### D. Count III – Tortious Interference

Tennessee law recognizes the tort of intentional interference with business relations. To recover under such a theory, a plaintiff must demonstrate "(1) an existing business relationship with specific third parties or a prospective relationship with an identifiable class of third persons; (2) the defendant's knowledge of that relationship and not a mere awareness of the plaintiff's business dealings with others in general; (3) the defendant's intent to cause the breach or termination of the business relationship; (4) the defendant's improper motive or improper means; and finally, (5) damages resulting from the tortious interference." *Trau-Med of Am., Inc. v. Allstate Ins. Co.*, 71 S.W.3d 691, 701 (Tenn. 2002) (internal citation and footnotes omitted). Because such a claim requires the intervention of a third party, Tennessee courts also recognize that "a party to a contract [or business relationship] cannot be liable for tortious interference with the performance of that contract [or business relationship]." *Cambio Health Sols., LLC v. Reardon*, 213 S.W.3d 785, 790 (Tenn. 2006); *Forrester v. Stockstill*, 869 S.W.2d 328, 333–35 (Tenn. 1994). Thus, interference by an employee of one of the parties generally will not give rise to a valid claim:

> [W]hen an . . . employee of a corporation acts within the general range of his authority, and his actions are substantially motivated by an intent to further the interest of the corporation, in claims of intentional interference with employment, the action of the . . . employee is considered to be the action of the corporation and is entitled to the same immunity from liability.

*Cambio Health Sols.*, 213 S.W.3d at 790 (quoting *Forrester*, 869 S.W.2d at 334–35); *see also Doe v. Belmont Univ.*, 334 F. Supp. 3d 877, 905 (M.D. Tenn. 2018) (Crenshaw, C.J.) ("Belmont cannot be liable for interference with its own business relationship with Doe.").

In *Aldridge v. City of Memphis*, 404 F. App'x 29 (6th Cir. 2010), for example, where the plaintiff sued the City of Memphis for discrimination in violation of the ADEA and Title VII and

sued the Director of the Memphis Police Department in his individual capacity for tortious interference in the plaintiffs' business relationship with the City, the court, citing *Cambio*, held that, despite the Director's "rude remarks," the Director could not be liable for tortious interference, because he acted as an agent of the City itself:

> There is no evidence in the record that [Godwin] had any relationship with [plaintiffs] except through their connection with [the Department]. There is no evidence that [Godwin] harbored any malice, ill will, or other attitude or emotion towards [plaintiffs] *except within the context of [the Department]*. There is no evidence that [Godwin] would benefit personally from [plaintiffs' demotion]. Most importantly, there is no evidence that [Godwin was] acting for any purpose other than [his] perceived best interest for [the Department].

*Id.* at 43–44 (quoting *Forrester*, 869 S.W.2d at 334) (emphasis added by the Sixth Circuit).

The School System points out that the HR employees whom the plaintiff references in Count III of the Complaint are School System employees. It argues that, because its HR office and its own employees are not "third parties" to the relationship between the School System and the plaintiff, the Complaint fails as a matter of law to state a claim for tortious interference. It argues that the Complaint does not allege any facts suggesting that the HR employees were acting outside the scope of their employment, as one of the core functions of any HR department is to manage the applications of prospective employees. The School System also contends that the Complaint does not allege any improper means, defined by the Tennessee Supreme Court in *Trau-Med* as

> those means that are illegal or independently tortious, such as violations of statutes, regulations, or recognized common-law rules; violence, threats or intimidation, bribery, unfounded litigation, fraud, misrepresentation or deceit, defamation, duress, undue influence, misuse of inside or confidential information, or breach of a fiduciary relationship; and those methods that violate an established standard of a trade or profession, or otherwise involve unethical conduct, such as sharp dealing, overreaching, or unfair competition.

*Trau-Med*, 71 S.W.3d at 701 n.5.

In response, the plaintiff first insists that she did identify a third party: "CMCSS hiring principals," specifically including CMCSS HR personnel, Jeanine Johnson and Melissa Izatt.

(Doc. No 14, at 17.) However, she also concedes that, generally, "a manager, supervisor or officer cannot interfere with . . . an applicant's prospective business relationship." (*Id.* at 18.) She nonetheless argues that corporate officials and employees can be individually liable for their own tortious conduct when they act outside the scope of their employment or with improper motives. She insists that in this case, the HR employees acted outside the scope of their employment, abused their power, and acted with malice in "placing Ms. Bunt on that list that was distributed to hiring officials/principals throughout the district for the sole purpose of preventing Ms. Bunt from the only pathway to employment within CMCSS." (*Id.* at 20.) She insists that, if HR personnel claim not to be involved in actual hiring decisions, the "blacklist" expressly contradicts that assertion and demonstrates their bad faith.

The "blacklist," however, is not the smoking gun Bunt insists that it is. The notation on the list next to her name simply highlights the undisputed fact that Bunt has a limited license to teach a specific category of classes, rather than a traditional teaching license. Every other inference the plaintiff seeks to draw from the annotation relies entirely on speculation. Bunt does not allege actual facts suggesting that any HR employee was acting outside the scope of his or her employment in highlighting that fact or that any person committed some independently tortious act. Moreover, as in *Aldridge* and *Forrester*, the plaintiff's only contact with HR personnel arose within the context of the employment relationship, during the course and scope of the HR employees' jobs. There is no suggestion that these employees personally stood to benefit from denying the plaintiff the opportunity to interview for teaching positions or acted other than in what they perceived to be the School System's best interest.

Because the HR office and HR employees are not "third parties" to the plaintiff's relationship with the School System, and the plaintiff does not allege any facts that would make

the individuals involved third parties to that relationship, her claim for tortious interference is subject to dismissal for failure to state a claim for which relief may be granted.

## IV. CONCLUSION

For the reasons set forth herein, the defendant's motion will be granted in part and denied in part. Specifically, the motion will be granted as to Count III and part of Count II and denied with respect to Count I and part of Count II. An appropriate Order is filed herewith.

_____
ALETA A. TRAUGER
United States District Judge